## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN F. CORCORAN,
     Plaintiff,

     v.

MICHAEL J. ASTRUE,
     Defendant.

NO. 3:04cv946 (SRU)

## RULING AND ORDER

On August 21, 2007, Magistrate Judge William I. Garfinkel issued a recommended ruling on John F. Corcoran's motion to reverse or remand the decision of the Commissioner of Social Security (doc. # 32). In his decision, the Judge Garfinkel thoroughly reviewed the record and addressed Corcoran's claims. Judge Garfinkel denied Corcoran's motion to reverse or remand (doc. # 27) and granted the Commissioner's motion to affirm (doc. # 28). Corcoran filed a timely objection (doc. # 35). I now review Judge Garfinkel's recommended ruling *de novo*.

After careful consideration and for the reasons that follow, the Recommended Ruling is **APPROVED** and **ADOPTED** as supplemented.

## I.    Factual and Administrative Background

Judge Garfinkel set forth a detailed description of the factual and administrative underpinning of this dispute in his comprehensive Recommended Ruling. Most relevant to Corcoran's objections are the findings of fact of the Administrative Law Judge ("ALJ") who heard Corcoran's case on behalf of the Commissioner, the transcript of the September 16, 2003 administrative hearing before the ALJ, and the records Corcoran and his treating physician submitted. In his motion to reverse or remand, Corcoran argues that his treating physician's opinion should have been given controlling weight and that the record did not contain substantial

evidence to support the Commissioner's decision.  Judge Garfinkel concluded that the correct

legal standards were applied and that substantial evidence supported the decisions not to give the

treating physician's testimony controlling weight and to deny Corcoran benefits.  Corcoran then

objected that the recommended ruling failed to address his allegations regarding: (1) the ALJ's

inconsistent statements about Corcoran's credibility, (2) the improper conduct of the ALJ at the

hearing, and (3) the progression of Corcoran's symptoms, which created inconsistencies in the

record.  I now addresses each of those complaints in turn.

**II.      Standard of Review**

The District Court makes a *de novo* determination of the portions of a recommended

ruling to which an objection is made.  The court may adopt, reject, or modify, in whole or in part,

the Magistrate Judge's recommended ruling.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A court will set aside the ALJ's decision only if it was based upon legal error or is not supported

by substantial evidence.  *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

**III.     Discussion**

Judge Garfinkel held that substantial evidence exists in the record to support the

Commissioner's conclusion that Corcoran "still retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*,

168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

Corcoran objects to that holding on three grounds.

      A.      Plaintiff's First Objection:  The ALJ Made Inconsistent Statements Regarding
           Corcoran's Credibility

Corcoran objects that the ALJ made inconsistent statements regarding Corcoran's

credibility.  I conclude that the ALJ's comments regarding Corcoran's credibility were consistent,

when viewed in context.  Those comments were:

> Statement at Hearing:  "I have no reason to doubt the credibility of anything that Mr. Corcoran has testified to so far."  (Tr. 306-07.)

> Statement in Findings:  "The claimant's allegations regarding the limitations caused by his impairments are credible."  (Tr. 21.)

> Statement in Decision:  "The claimant's testimony concerning his symptoms and limitations is less than fully credible."  (Tr. 18.)

Although two comments credit Corcoran and the other does not, they address different issues and, when examined carefully, are not inconsistent.  The ALJ's statements at the hearing and in the findings reflect the ALJ's overall impression of Corcoran's testimony.  The ALJ fully credited Corcoran's testimony that his blood "sugar levels show wide swings" and that he "is not very active."  (Tr. 18.)

The statement in the decision regarding Corcoran's symptoms and limitations is more narrow.  The paragraph following the quoted statement catalogues the discrepancy between Corcoran's testimony[1] and his claim that his symptoms limit him to an extent that they render him "disabled."  The ALJ did not doubt Corcoran's credibility about his perceived limitations; the ALJ ultimately discredited Corcoran's claim that his asserted limitations amounted to disability.

The ALJ's statements comport with each other and with the fact that the ALJ ultimately weighed the evidence of Corcoran's limitations and symptoms to support a finding of no disability.  Corcoran's first objection does not require reversal or remand.

---

[1] Corcoran admitted that, during the period he claimed he was "disabled," he drove for an hour a day, accomplished housework, took care of personal needs, cooked, shopped, did laundry, shoveled snow, and trimmed hedges.  (Tr. 18, 57-62, 70.)  During the hearing, he admitted that sitting for extended periods does not bother him. (Tr. 306.)

B.      Plaintiff's Second Objection: The ALJ Improperly Dissuaded the Plaintiff From
        Presenting Helpful Testimony

Corcoran alleges that the ALJ mislead Corcoran into not presenting potentially helpful

evidence and thereby violated the ALJ's duty to develop the record.  Corcoran's allegation arises

from the following statement of the ALJ at the hearing:

> [Y]ou have the right to further testimony if you wish, but I will tell you that I
> have no reason to doubt the credibility of anything that Mr. Corcoran has
> testified to so far.  So if your intent is simply to present some corroborative
> testimony it doesn't seem to me that that's necessary.

(Tr. 306-07.)  Corcoran claims that the ALJ's statement caused Corcoran's attorney not to call

Corcoran's sister-in-law to testify, although she was available at the hearing for that purpose.

Corcoran argues that, because the ALJ ultimately did not credit Corcoran's claim, the ALJ's

statement was misleading.

Corcoran argues the ALJ violated a duty to develop the record to ensure Corcoran had a

full and fair hearing.  To the contrary, I find: (1) the ALJ owed no special duty to Corcoran, (2)

the ALJ did not mislead Corcoran, and (3) the record was sufficiently developed.

The ALJ satisfied his duty to develop the record.  The claimant in a disability hearing is

entitled to "a full hearing under the Secretary's regulations and in accordance with the beneficent

purposes of the Act."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.

1982) (citing *Gold v. Sec'y of Health & Human Servs.*, 463 F.2d 38, 42 (2d Cir. 1972)).  In the

hearing, "the ALJ generally has an affirmative obligation to develop the administrative record."

*Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Although the "duty exists even when the

claimant is represented by counsel," *id.*, the ALJ is "under a heightened duty" where the claimant

is unrepresented by counsel, *Echevarria*, 685 F.2d at 755; *Lopez v. Sec'y of Health & Human*

-4-

*Servs.*, 728 F.2d 148, 149 (2d Cir. 1984) ("The Secretary is not obligated to furnish a claimant with counsel, but the ALJ has a special duty to protect the rights of a *pro se* claimant.").

The Secretary's regulations describe the ALJ's general duty by stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d); *see also Perez*, 77 F.3d at 47. The regulations also state that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision." 20 C.F.R. § 404.1512(e).

The ALJ's duty to further investigate the facts is not absolute and depends on the record before the ALJ. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (finding the ALJ had no obligation to develop the record concerning a possible mental disability when treatment notes from a medical provider indicated that plaintiff's symptoms were under "adequate control" and that medication produced "good results."). Where the plaintiff's treating physician submits information to the ALJ indicating the plaintiff is not under the alleged disability, the ALJ may not need to further develop the record on that issue. *See id.*

As an initial matter, Corcoran was represented by counsel at his hearing and ALJ owed Corcoran only a general duty to develop the record. Second, the transcript of the hearing shows the ALJ did not discourage Corcoran's attorney from presenting Corcoran's case. The ALJ did not doubt Corcoran's statements regarding his most serious allegations, *i.e.*, that he twice required medical attention after hypoglycemic events, experienced wide swings in his sugar

levels that he could not anticipate, and experienced numbness in his hands. (Tr. 17-18.) If the proposed additional witness would have added comments about these factors, it would have constituted unnecessary "corroborative" testimony because those symptoms were fully credited. If the witness intended to add information about additional hypoglycemic events or ways in which Corcoran was a danger to himself and others, that would not have been "corroborative" testimony and was not discouraged by the ALJ.[2]  The ALJ did not mislead Corcoran because he did not discourage Corcoran's attorney from presenting additional, non-corroborative testimony.

Neither can Corcoran allege that the ALJ's duty to develop the record required him to hear the testimony of Corcoran's proffered witness. Corcoran relies heavily on *Lopez*, *supra*, to support his argument, but the material issues there are different. In *Lopez*, the claimant spoke little English and was unrepresented by counsel at the hearing. 728 F.2d at 150. She offered a corroborative witness who likely did speak English but whose testimony the ALJ rejected as cumulative. *Id.* The claimant had testified that she required help with "such basic daily activities as shopping, cleaning, bathing, and taking injections" because of her symptoms and pain. *See id.* The woman who accompanied the claimant assisted the claimant with everything the claimant could not do for herself. *See id.* The ALJ assured the claimant the additional testimony was unnecessary by stating, "I see no need to bring somebody in to corroborate your testimony. You're under oath, and I'll accept what you tell me." *Id.* The ALJ's ultimate decision "was

---

[2]  It is highly unlikely the witness would have added information pertaining to additional, serious hypoglycemic events for which Corcoran had produced no medical records at the hearing. Corcoran did not present any such records when he had the opportunity to supplement the Administrative Record after the hearing. At that time, he submitted only documents detailing Dr. Petit's credentials, information concerning the Joslin Center for Diabetes, and two letters from Dr. Petit, discussed below.

greatly influenced by his disbelief of" the claimant's testimony, *id.* at 151, and his finding that

her "claims of severe pain were not credible," *id.* at 150.  On review, the Commissioner argued

that the witness "could not have testified as to [claimant's] subjective complaints of pain" to

corroborate that assertion.  *See id.*

 The Second Circuit reversed and remanded the case because it determined that the

corroborative testimony "would have been valuable in assessing the credibility of [claimant's]

testimony" regarding her "dependence on assistance in performing functional activities."  *Id.*  In

light of the divergence between the ALJ's statements at the hearing and his decision, the court

held it "was simply unfair to preclude the testimony of a sole corroborative witness as cumulative

by assuring [claimant] that her testimony would be accepted, and then reject it as incredible."  *Id.*

 The present case is distinguishable from *Lopez*.  First, Corcoran was represented by

counsel and speaks English, so his testimony was not affected by the use of an interpreter.

Second, the material issue is different in each case.  In *Lopez*, the denial of benefits was "greatly

influenced" by the ALJ disbelieving the claimant's subjective complaints of pain.  *Id.*  In

contrast, the ALJ here credited Corcoran's descriptions of his limitations but not his final claim

that these limitations rendered him disabled.

 Third, the record before the ALJ at Corcoran's hearing was well developed.  The ALJ had

extensive records from Dr. Petit before him when he made the final determination.  One of Dr.

Petit's reports stated that Corcoran "has no severe hypoglycemia, only mild and . . . his vision has

been stable." (Tr. 153.)  Although Corcoran alleges he was disabled, his medical records indicate

his symptoms were under control and that treatment was effective.  (Tr. 153-225.)  The ALJ had

no obligation to develop the record further because he had received adequate information from

Dr. Petit's reports, Corcoran's questionnaires, and other medical records.

The SSA's process gave Corcoran many opportunities to show the limitations caused by his impairments and to explain how the evidence supported a finding of disability.  Corcoran simply could not prove limitations severe enough to support a determination of disability.

       C.       <u>Plaintiff's Third Objection: The ALJ Ignored a Progression of Impairments</u>

In Corcoran's objection to the recommended ruling, he alleges that the ALJ ignored evidence of a progression of impairments between Corcoran's October 18, 2002 disability application and the September 16, 2003 hearing before the ALJ.  At the hearing, Corcoran's counsel described the changes in Corcoran's activities that occurred over the course of the previous four or five years.  (Tr. 297.)  Corcoran noted he had increased numbness in his hands, began to require reading glasses, experienced leg cramps, and failed a stress test within the past year.  (Tr. 303-04, 306.)  Although Corcoran noted these developments, he did not indicate that changes in his symptoms at all affected his daily activities.  (Tr. 303-04, 306.)  In fact, he affirmed at the hearing that he can stand for an hour, sit for extended periods of time, and has no problem with concentration or memory.  (Tr. 306.)  The only discrepancy concerning Corcoran's activities in the record is that Corcoran indicated on a questionnaire that he shovels snow and stated at the hearing that he does not do so because of blood pressure concerns.  (Tr. 58, 301.)

Corcoran cites the opinions of his treating physician to support the argument that his symptoms show a deterioration of his condition.  Corcoran's treating physician for the past ten years has been Dr. William Petit, an endocrinologist and director of the Joslin Center for Diabetes at New Britain General Hospital.  Dr. Petit's August 2003 letter was the only letter from a treating physician in the Administrative Record at the time of the hearing.  That letter included

-8-

a medical opinion regarding Corcoran's physical condition and a non-medical opinion regarding

Corcoran's functional capabilities.[3]   (Tr. 236.)  Post-hearing letters in December 2003 and

January 2004 also gave both medical and non-medical opinions.  (Tr. 290-93.)  Dr. Petit

consistently asserts a medical opinion that Corcoran has an ongoing struggle with his sugar

levels.[4]

      The shifting language from Dr. Petit regarding Corcoran's ability to work does not show

deterioration.  Dr. Petit's opinion on the issue whether Corcoran is capable of light desk work is

a non-medical opinion and cannot be given controlling weight.[5]  Moreover, Dr. Petit's non-

medical opinions are inconsistent.  Dr. Petit wrote in August 2002 that the "unpredictability of

his glucoses makes it very difficult for him to function.  This would probably pose a problem for

him in maintaining any type of employment."  (Tr. 236.)  Dr. Petit concurred with the

Commissioner in December 2003 that Corcoran "remains capable of light work activities" (Tr.

290), but retracted this opinion one month later, saying "it is unsafe for Mr. Corcoran to work . . .

."  (Tr. 292.)  A change of opinion twice in five months is not evidence of a decline in Corcoran's

---

[3]  Medical opinions are "opinions on the issue(s) of the nature and severity of an
individual's impairment(s)."  Social Security Ruling 96-2p (1996).  "[S]ome kinds of findings –
including the ultimate finding of whether a claimant is disabled and cannot work – are reserved
to the Commissioner. . . . [T]he Social Security Administration considers the data that physicians
provide but draws its own conclusions as to whether those data indicate disability.  A treating
physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*,
177 F.3d 128, 133 (2d Cir. 1999) (internal citations and quotations omitted).

[4]  The December 2003 letter states, "Many of his physical capabilities are not the issue.
The problem that Mr. Corcoran is running into is the brittleness of his blood sugar control.  We
have been struggling over the past several years attempting to stabilize his glycemic control, that
is to say his blood sugar levels are very labile."  (Tr. 290.)

[5]  As noted in the Recommended Ruling, § VI(A), only *medical opinions* from a
claimant's treating physician are given controlling weight.

health.  This inconsistency reduces Dr. Petit's credibility on the "ultimate issue."  The December

2003 opinion also serves as additional evidence supporting the ALJ's determination that

Corcoran was medically capable of doing light work.

The main problem for Corcoran is that the ALJ fully credited Corcoran's statements that

he drove, did housework and laundry, cooked, shopped, experienced no trouble sitting, is able to

read with glasses (Tr. 17-19), had no problems with his concentration (Tr. 306), and otherwise

remained functional.  That level of activity supports the ALJ's finding that Corcoran was capable

of light work.  Although Corcoran later claimed a decline, his statements at the hearing do not

contradict the gravitas of the questionnaires, which indicate Corcoran remains somewhat active

and functional.

The ALJ's decision rests on the absence of medical records or opinions suggesting

deterioration, and substantial evidence from Corcoran, which was never recanted or substantially

modified, indicating he had a range of functional abilities.

## IV.     Conclusion

For the reasons set forth above, the Recommended Ruling (doc. # 32) is **APPROVED**

and **ADOPTED**.  Accordingly, plaintiff's Motion (doc. # 27) is **DENIED**; defendant's Motion

(doc. # 28) is **GRANTED**.  The clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 26th day of January 2009.


/s/ Stefan R. Underhill
                        Stefan R. Underhill
                        United States District Judge


-10-